RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

2012 FEB 24 P 3: 15

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | | |
|---|---|---|
| JOHN A. ABRAMS, PRISCILLA W. ABRAMS, DEBRA CLARK, BARON J. LOWE, MELANIE D. LOWE, FREDRICK GLEN WILLIAMS, and KRISTY A. WILLIAMS,<br><br>PLAINTIFFS,<br><br>v.<br><br>THOMAS H. TUBERVILLE, JOHN DAVID STROUD, TS CAPITAL PARTNERS, TS CAPITAL PARTNERS, LLC, TS CAPITAL MANAGEMENT, LLC, TS CAPITAL FUND, L.P., TS CAPITAL GP, LLC, STROUD CAPITAL FUND, L.P., STROUD CAPITAL MANAGEMENT, LLC, and STROUD CAPITAL GP, LLC,<br><br>DEFENDANTS. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 3:12-cv-177-WHA<br><br>JURY TRIAL DEMANDED |

**COMPLAINT**

Plaintiffs, John A. Abrams, Priscilla W. Abrams, Debra Clark, Baron J. Lowe, Melanie D. Lowe, Fredrick Glen Williams, and Kristy A. Williams (collectively referred to herein as "Plaintiffs"), by their undersigned counsel, bring this action against Defendants Thomas H. Tuberville, John David Stroud, TS Capital Partners, TS Capital Partners, LLC, TS Capital Management, LLC, TS Capital Fund L.P., TS Capital GP, LLC, Stroud Capital Fund, L.P, Stroud Capital Management, LLC, and Stroud Capital GP, LLC for damages, and as grounds states as follows:

## THE PARTIES

### INVESTORS

1.     John A. Abrams ("John Abrams") is over the age of 19 years and resides in Wetumpka, Alabama.

2.     Priscilla W. Abrams ("Priscilla Abrams") is over the age of 19 years and resides in Wetumpka, Alabama.

3.     Debra Clark ("Debra Clark") is over the age of 19 years and resides in Lake Village, Arkansas.

4.     Baron J. Lowe ("Baron Lowe") is over the age of 19 years and resides in Hendersonville, Tennessee.  Baron Lowe was an employee of one or more of the Entity Defendants (as hereinafter defined) from or about January 2011 through September 2011.

5.     Melanie D. Lowe ("Melanie Lowe") is over the age of 19 years and resides in Hendersonville, Tennessee.

6.     Fredrick Glen Williams ("Glen Williams") is over the age of 19 years and resides in Auburn, Alabama.  Glen Williams was an employee of one or more of the Entity Defendants from or about January 2011 thorough September 2011.

7.     Kristy A. Williams ("Kristy Williams") is over the age of 19 years and resides in Auburn, Alabama.

### DEFENDANTS

8.     Thomas H. Tuberville ("Tuberville") is over the age of 19 years and, upon information and belief, resides in Lubbock, Texas. Tuberville is a co-founder and one of the two principals and controlling persons of the Entity Defendants (as defined below) and their affiliates.

2

9.     John David Stroud ("Stroud") is over the age of 19 years and, upon information and belief, resides in Auburn, Alabama. Stroud is a co-founder and one of the two principals and controlling persons of the Entity Defendants and their affiliates.

10.     TS Capital Partners is a general partnership comprised of Tuberville and Stroud and is an affiliate of the other Entity Defendants with its last known principal place of business at 2148 Moore's Mill Road, Auburn, Alabama.

11.     TS Capital Partners, LLC is purportedly a limited liability company with its last known principal place of business at 2148 Moore's Mill Road, Auburn, Alabama.

12.     TS Capital Fund, L.P. ("TS Fund") is a limited partnership with its last known principal place of business at 2148 Moore's Mill Road, Auburn, Alabama.

13.     TS Capital GP, LLC (the "General Partner") is a limited liability company with its last known principal place of business at 2148 Moore's Mill Road, Auburn, Alabama.

14.     TS Capital Management, LLC ("TS Management") is a limited liability company with its last known principal place of business at 2148 Moore's Mill Road, Auburn, Alabama.

15.     Stroud Capital Fund, L.P. is a limited partnership with its last known principal place of business at 2148 Moore's Mill Road, Auburn, Alabama.

16.     Stroud Capital GP, LLC is a limited liability company with its last known principal place of business at 2148 Moore's Mill Road, Auburn, Alabama.

17.     Stroud Capital Management, LLC is a limited liability company with its last known principal place of business at 2148 Moore's Mill Road, Auburn, Alabama.

18.     TS Capital Partners, TS Capital Partners, LLC, TS Capital Fund, L.P, TS Capital GP, LLC, and TS Capital Management, LLC are collectively referred to herein as the "TS Capital Entities."   Stroud Capital Fund, L.P., Stroud Capital GP, LLC, and Stroud Capital

3

Management, LLC are collectively referred to as the "Stroud Capital Entities." The TS Capital Entities and the Stroud Capital Entities are collectively referred to as the "Entity Defendants."

### NATURE OF THE ACTION

19.     Stroud initially formed some of the Entity Defendants to solicit investors in, manage, and operate one or more so-called "hedge funds." Later, Stroud and Tuberville formed the remaining Entity Defendants to solicit investors in, manage, and operate one or more hedge funds. In connection with the sales to Plaintiffs of interests in such hedge fund(s), Defendants, by use of means or instrumentalities of interstate commerce and by use of the United States mails: (a) employed devices, schemes, and artifices to defraud Plaintiffs, (b) made untrue statements of material facts and omitted to state other material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaged in acts, practices or courses of business which operated as a fraud and deceit upon Plaintiffs.

20.     Stroud, Tuberville and the Entity Defendants have defrauded Plaintiffs, all of whom invested in one or more of the Entity Defendants, and have misused the assets of the Entity Defendants to further the interests of Stroud and Tuberville. Stroud and Tuberville acted contrary to the stated investment strategy of Defendants as represented to Plaintiffs and contrary to the best interests of Plaintiffs.

21.     Defendants knew or reasonably believed that investments in Defendants' hedge fund(s) and the underlying commodities and derivatives were not suited to Plaintiffs' needs, but nonetheless represented that Defendants' hedge fund(s) were safe investments and recommended such investments to Plaintiffs and solicited their investments in those hedge fund(s). Defendants'

4

made material misrepresentations and/or failed to disclose material information relating to the unsuitability of Defendants' hedge fund(s) as investments for Plaintiffs.

22.     Defendants negligently and/or wantonly breached their duties to Plaintiffs and as a proximate consequence Plaintiffs were substantially damaged.

### JURISDICTION AND VENUE

23.     This civil action arises under United States law, namely, § 12(a)(2) of the Securities Exchange Act of 1933, § 10(b) of the Securities Exchange Act of 1934, and §§ 4b(a), 4b(e), and 4o(1) of the Commodities Exchange Act. Accordingly, the Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. Additional claims in this action arise under Alabama law. This Court has supplemental jurisdiction over those claims pursuant to Alabama law, because they are so related to the claims in the action within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a).

24.     Venue in the United States District Court for the Middle District of Alabama is proper under 28 U.S.C. § 1391(b)(2), as amended by the Federal Courts Jurisdiction and Venue Clarification Act of 2011. A substantial part of the events or omissions giving rise to the claims occurred in the Middle District of Alabama. All Defendants are subject to personal jurisdiction in this judicial district.

### FACTUAL ALLEGATIONS

### Plaintiffs' Investments
### in the Entity Defendants

25.     In or about January 2008, John Abrams invested approximately $60,000 with the Stroud Entities. In or about September 2008, John Abrams transferred his IRA, in the approximate amount of $734,480.34, from Lehman Brothers to a Stroud Capital Management

bank account at Wachovia Bank, to be invested with the Stroud Entities. Plaintiffs are informed and believe that all of John Abrams' funds invested with the Stroud Entities were transferred to one or more of the TS Capital Entities in 2010. In or about August 2011, Defendants delivered a subscription agreement for a limited partner interest in the TS Fund to John Abrams, which he signed and returned to Defendants. Therefore, the aggregate value of John Abrams initial investments in the Defendant Entities was approximately $794,480.

26.     In or about May 2009, Priscilla Abrams transferred her IRA, amounting to approximately $10,778.95, to Stroud Capital Management.  Plaintiffs are informed and believe that all of Priscilla Abrams' funds invested with the Stroud Entities were transferred to one or more of the TS Capital Entities in 2010. In or about August 2011, Defendants delivered a subscription agreement for a limited partner interest in the TS Fund to Priscilla Abrams, which she signed and returned to Defendants.

27.     In or about September 2010, Debra Clark transferred a traditional IRA, in the approximate amount of $94,003.70, and a Roth IRA, in the approximate amount of $20,342.10, to the TS Capital Entities for investment in TS Fund. Also in or about September 2010, Debra Clark invested an additional approximately $165,000 in the TS Capital Entities. In or about March 2011, Debra Clark made a contribution of approximately $5,000 to her Roth IRA with the Defendant Entities.  Therefore, the aggregate initial value of Debra Clark's investments in the Defendant Entities was approximately $284,345.

28.     On or about January 26, 2011, Baron Lowe transferred the proceeds of his 401(k) account, in the approximate amount of $249,261.61, to an IRA held by and invested in the TS Capital Entities. In or about February 2011, Baron Lowe transferred his Roth IRA, in the approximate amount of $20,158.25, to the TS Capital Entities.  On or about April 4, 2011,

Melanie Lowe invested approximate $20,158.25 with the TS Capital Entities. In or about March 2011, Baron Lowe and Melanie Lowe, as joint tenants, invested approximately $174,501.88 in the TS Capital Entities. On or about May 10, 2011, Baron and Melanie Lowe invested the college savings accounts of their daughter and son, in the approximate amounts of $40,960.05 and $27,118.36, respectively, in the TS Capital Entities.  In or about June or July 2011, Baron Lowe and Melanie Lowe executed subscription agreements for limited partner interests in TS Fund with respect the above-described transfers and deposits. Therefore, the aggregate initial value of Baron and Melanie Lowe's investments in the Defendant Entities was approximately $532,158.

29.     On or about August 10, 2010, Glen Williams transferred his IRA in the approximate amount of $47,447.91 to the TS Capital Entities. He made subsequent contributions to that account totaling approximately $72,557.41 and executed a TS Fund Subscription Agreement dated August 10, 2010. Therefore, the aggregate initial value of Glen Williams' investments in the Defendant Entities was approximately $120,005.

30.     On or about August 10, 2010, Kristy Williams transferred her IRA in the approximate amount of $18,921.03  to the TS Capital Entities.

31.     Therefore, the aggregate initial value of Plaintiffs' investments in the Defendant Entities was approximately $1,760,700.

## Ownership, Management, and Control
## of the Entity Defendants

32.     Stroud operated a hedge fund through the Stroud Entities beginning in or about 2008. Upon information and belief, that fund ceased operations and transferred its assets to TS Fund in or about 2010. The records of the Delaware Secretary of State reflect that the registration

of each of the Stroud Entities to transact business in Delaware has been cancelled for failure to pay taxes due.

33.     The General Partner's members are or were, at times relevant to this action, Stroud and Tuberville, who each own or owned one-half of its equity interests. Upon information and belief, Stroud and Tuberville, in addition to being the members of the General Partner, were and are the managers of the General Partner. The General Partner was and is responsible for managing TS Fund's business and affairs.  As the members and managers of the General Partner, Stroud and Tuberville controlled the management of the business and affairs of General Partner and, consequently, controlled the management of the business and affairs of TS Fund and the TS Capital Entities.

34.     TS Management is or was registered as a Commodity Pool Operator with the United States Commodity Futures Trading Commission (the "CFTC"). It performed investment management services for TS Fund, until the National Futures Association (the "NFA") issued a Notice of Member Responsibility Action Under NFA Compliance Rule 3-15, dated October 26, 2011 (the "NFA Notice"), that prohibits TS Management from, among other activities, placing trades and soliciting funds, and requires that TS Management provide copies of the NFA Notice via overnight courier to all customers and participants in any pools that it operates or controls, including the firm's proprietary fund, all investors in any other funds or investment vehicles over which TS Management or any of its principals exercises control, and all financial institutions in which TS Management maintains any accounts either in its name or under its control. Defendants have not provided copies of the NFA Notice to Plaintiffs, as required.

35.     TS Management's members are or were, at times relevant to this action, Stroud and Tuberville, who each own or owned one-half of its equity interests. Plaintiffs are informed

and believe that Stroud and Tuberville are also the managers of TS Management. As the members and managers of TS Management, Stroud and Tuberville controlled the management of its business and affairs. According TS Fund's Confidential Private Offering Memorandum dated June 23, 2009 (the "Offering Memorandum"), TS Management provided investment management services to the TS Fund, for a management fee of 2% per annum of TS Fund's net assets and a "Performance Allocation" of 20% of the TS Fund's net profits, if any. Notwithstanding the Offering Memorandum's designation of TS Management as the investment manager of TS Fund, Defendants have represented that TS Capital Partners is an investment manager of TS Fund.

36. Stroud and Tuberville provided business cards to one or more of Plaintiffs identifying Stroud as President and Portfolio Manager of "T.S. Capital" and Tuberville as Managing Partner of T.S. Capital. The Offering Memorandum summarizes Tuberville's responsibilities as follows: "Tommy Tuberville, the co-founder of TS Capital Management ('TSCM'), is responsible for the investment direction, capital raising, and the day-to-day oversight of business decisions of TSCM. In this capacity, Mr. Tuberville provides the fund with strategic direction and guidance while overseeing investment opportunities. Mr. Tuberville also evaluates and researches each private equity investment opportunity considered by TSCM." The Offering Memorandum summarizes Stroud's responsibilities as follows: "David Stroud, the co-founder of TS Capital Management ('TSCM'), is responsible for the investment strategy and day-to-day oversight of the portfolio investments managed by overseeing investment decisions. Mr. Stroud also evaluates and researches each investment opportunity considered by TSCM."

37.     In July 2009, Tuberville was the subject of a news story which appeared on www.al.com and elsewhere touting his work at "T.S. Capital Partners" which included "drumming up business" for a "big-time hedge fund" at which he maintained his own office.

### Defendants' Misrepresentations

38.     Stroud, Tuberville, and the Entity Defendants solicited Plaintiffs' investments in TS Fund and/or other hedge funds managed and operated by Defendants, pursuant to the Offering Memorandum and by other untrue representations and fraudulent measures. TS Fund is a hedge fund that, according to the Offering Memorandum, sought to provide its investors "above-average returns with below-average risk non-correlated to traditional asset classes" by "using quantitative, mathematical models to initiate positioning in the credit, equity, futures, and derivatives markets." In addition to the Offering Memorandum, Defendants marketed investment in their hedge funds through a Due Diligence Questionnaire dated June 8, 2011 (the "Due Diligence Questionnaire"), an Investment Policy Statement (the "Investment Policy Statement"), a document titled Frequently Asked Questions for TS Capital Partners (the "FAQ"), www.tscapital.net (the "TS Capital Website"), and through other written and oral communications.

39.     Defendants did not register any of the hedge fund interests sold by them to Plaintiffs with the United States Securities and Exchange Commission (the "SEC") or the Alabama Securities Commission (the "ASC"). The Offering Memorandum claims that the limited partner interests in TS Fund offered and sold to Plaintiffs were exempt from registration pursuant to Regulation D promulgated under the Securities Act of 1933. However, based on a search of the SEC's EDGAR database, no Form D was filed with respect to the offering, as required for an exemption from registration pursuant to Regulation D.

40.     Defendants represented, in the Offering Memorandum dated June 23, 2009, that TS Fund was a Delaware limited partnership and the General Partner and TS Management were Delaware limited liability companies. However, TS Fund, the General Partner, and TS Management were not organized as a limited partnership and limited liability companies under Delaware law until June 17, 2010, approximately one year after the date of the Offering Memorandum.

41.     Defendants represented that the hedge fund(s) operated and managed by them would be safe investments for Plaintiffs and would be properly operated with adequate checks and balances and in accordance with applicable laws and regulations. However, among other improper actions taken, Defendants co-mingled the assets of the Entity Defendants with some of their personal assets, misappropriated the assets of the Entity Defendants, failed to file tax returns as required, falsified client statements and fund performance reports, and otherwise failed to comply with applicable laws and regulations, including regulations of the CFTC.

42.     Defendants represented, in the Offering Memorandum, the Due Diligence Questionnaire, the FAQ, and orally, that the books and records of TS Fund would be audited at the end of each fiscal year by Rothstein Kass, a certified public accounting firm with offices in New York, New York, and several other major cities. However, upon information and belief, no audit of any Defendant Entity's books and records was ever performed. No Plaintiff was ever furnished audited year-end financial statements of any Defendant Entity.

43.     Defendants represented, in the Due Diligence Questionnaire, the FAQ, and orally that Lovoy Summerville & Shelton would serve as the third-party administrator of TS Fund. However, Lovoy Summerville & Shelton did not serve as the third-party administrator of TS

Fund, but rather informed Defendants that it could not serve in that capacity. Upon information and belief, none of the Entity Defendant hedge funds ever employed a third-party administrator.

44.     Defendants represented in the Offering Memorandum that Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz Levin") was legal and tax counsel to TS Fund and legal counsel to the General Partner. However, Mintz Levin did not provide any legal services to Defendants in connection with the formation or operation of any TS Capital Entity, except with respect to the NFA examination of certain of the Entity Defendants.

45.     The Offering Memorandum represents that the General Partner would at all times maintain a capital account in TS Fund of at least $1,000,000. Plaintiffs are informed and believe that the General Partner did not maintain at any relevant time a capital account in TS Fund of at least $1,000,000.

46.     Defendants represented that the investments of the Entity Defendant hedge funds would be actively managed. However, Plaintiffs are informed and believe Defendants never actively managed the Entity Defendant hedge funds and, in all events, ceased any management of the assets of the Entity Defendant hedge funds in or before April 2011, when Stroud's registration with the Financial Industry Regulatory Authority ("FINRA") was suspended.

47.     Defendants failed to disclose to Plaintiffs that Stroud's FINRA registration was suspended or the two FINRA arbitration awards against Stroud – one for over $620,000 and the other for over $220,000, which apparently caused or contributed to the suspension of Stroud's FINRA registration.

48.     Section 9 of the Offering Memorandum states that a limited partner of TS Fund may upon giving 30 days' written notice withdraw all or any part of his capital account in TS Fund as of the last business day of any fiscal quarter, subject to a "Lock-up Period" consisting of

the first quarter of a limited partner's investment in TS Fund and certain restrictions purported to be contained in a Partnership Agreement, which upon information and belief none of Plaintiffs executed or were provided. More than 30 days prior to December 31, 2011, several of Plaintiffs demanded in writing that Defendants return their capital invested in the hedge funds. No Plaintiff has received a return of his or her capital, as demanded.

49.     On or about September 28, 2011, Tuberville informed Baron Lowe and Glen Williams that all of the funds of all investors would be returned to them. Also on or about September 28, 2011, Stroud informed Baron Lowe that all of the funds of all investors would be returned to them before October 7, 2011. On multiple occasions in or about September and October 2011, Stroud informed several of Plaintiffs that their funds would be returned. That has not occurred.

**Mismanagement and Conversion**

50.     The Entity Defendants failed to take the most basic of organizational and administrative actions. For example, the Entity Defendants failed to:  timely file federal and state income tax returns; register to transact business in Alabama; maintain a registered agent as required by law; and comply with regulatory requirements. The Entity Defendants generally disregarded and violated customary practices and procedures followed in the hedge fund and securities investments industries.

51.     In or about November 2011, most of Plaintiffs made written demands upon Defendants for an accounting of Plaintiffs' respective investments with Defendants. No accounting of any sort was furnished by any of Defendants, although counsel for Tuberville and Stroud acknowledged receipt of the demand letters and provided some information in response to the letters.

52. Despite inquiries of Defendants and various other persons, including regulatory agencies, Plaintiffs do not know the current status of, the location of, or who controls their invested funds. Plaintiffs have reason to believe that most, and possibly all, of their invested funds have been misappropriated, improperly converted, and/or squandered by one or more Defendants, and might have been deposited in off-shore accounts for the benefit of some Defendants.

## COUNT 1: VIOLATIONS OF SECTION 10(b) OF THE SECURITIES EXCHANGE ACT OF 1934

53. Paragraphs 1 through 52 are incorporated herein by reference in the same manner as if repeated herein verbatim.

54. Defendants violated the Federal Securities Exchange Act of 1934 (the "1934 Act") as a result of their acts, actions, and omissions with respect to the offerings described herein.

55. As set forth in the factual allegations above, Defendants intentionally or recklessly made untrue statements of material facts and omitted to state material facts as alleged above to induce Plaintiffs to purchase interests in the hedge fund or funds operated and managed by Defendants.

56. Moreover, Defendants knew or reasonably believed that investments in Defendants' hedge fund(s) and the underlying commodities and derivatives were not suited to Plaintiffs' needs, but nonetheless represented that Defendants' hedge fund(s) were safe investments and recommended them to Plaintiffs and solicited their investments therein. Defendants made material misrepresentations and/or failed to disclose material information relating to the unsuitability of Defendants' hedge fund(s) as investments for Plaintiffs.

14

57.     Plaintiffs did not know such statements were untrue and incomplete and reasonably substantially relied on Defendants' misrepresentations to their detriment by purchasing such securities.

58.     Plaintiffs had neither knowledge, nor reason to know, of their claims under the 1934 Act against these Defendants until within two years of the filing of this Complaint. This Complaint is filed within five years of Defendants' actions and omissions giving rise to Plaintiffs' claims under the 1934 Act.

59.     In connection with the offers and sales of such securities to Plaintiffs, Defendants, by use of the means and instrumentalities of interstate commerce and by use of the United States mails have, directly and indirectly, (a) employed devices, schemes, and artifices to defraud Plaintiffs, (b) made untrue statements of material facts or omissions to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) engaged in transactions, practices and courses of business which operated as a fraud and deceit on Plaintiffs, all in violation of Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

60.     Tuberville and Stroud, as persons who directly or indirectly control the Entity Defendants, are under Section 20(a) of the 1934 Act liable jointly and severally with and to the same extent as the Entity Defendants for violations of Section 10(b) and Rule10b-5 by the Entity Defendants.

61.     Defendants' violations of Section 10(b) and Rule 10b-5 have caused Plaintiffs to suffer damages that are undeterminable at present time, because Plaintiffs do not have credible information regarding the current location and amounts of their funds, but collectively such damages are anticipated to exceed $1,760,000.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

## COUNT 2: VIOLATIONS OF SECTION 12(a)(2)
## OF THE SECURITIES ACT OF 1933

62.     Paragraphs 1 through 61 are incorporated herein by reference in the same manner as if repeated herein verbatim.

63.     This Count is asserted against Defendants for violations of Section 12(a)(2) of the Securities Act of 1933 (the "1933 Act"), 15 U.S.C. § 771(a)(2), on behalf of all Plaintiffs who purchased or otherwise acquired interests in the hedge fund or funds operated by Defendants.

64.     By means of the Offering Memorandum, oral and written solicitations and offers made directly to Plaintiffs, and general public solicitations, Stroud, Tuberville and the Entity Defendants solicited, offered, and sold securities to Plaintiffs.

65.     Stroud, Tuberville, and the Entity Defendants were sellers, offerors, or solicitors of securities offered pursuant to the Offering Memorandum and the other disclosures made by Defendants. Stroud, Tuberville, and the Entity Defendants were and are sellers within the meaning of the 1933 Act, because they (a) transferred title to Plaintiffs who purchased the securities and (b) solicited the purchases of the securities by Plaintiffs, motivated at least in part by the desire to serve the financial interests of Stroud, Tuberville, and the Entity Defendants. In so doing, they used the means and instrumentalities of interstate commerce and the United States mail.

16

66.     The Offering Memorandum and the other disclosures made to Plaintiffs by Defendants contained untrue statements of material fact and omitted other facts necessary to make the statements not misleading, and failed to disclose material facts, as set forth above.

67.     Defendants owed to Plaintiffs the duty to make a reasonable and diligent investigation of the statements contained in the Offering Memorandum and other disclosures, to ensure such statements were true, and there was no omission of material fact.

68.     Under Section 12(a)(2), Plaintiffs are entitled to recover the consideration paid for their interests in Defendants' hedge fund(s) with interest thereon, less the amount of any income received thereon, upon the tender of such interests to Defendants.

69.     Plaintiffs had neither knowledge, nor reason to know, of their claims under the 1933 Act against these Defendants until within one year of the filing of this Complaint. This Complaint is filed within three years of Defendants' sales of securities to Plaintiffs giving rise to Plaintiffs' claims under the 1933 Act.

70.     Tuberville and Stroud, as persons who directly or indirectly control the Entity Defendants, are under Section 15 of the 1933 Act liable jointly and severally with and to the same extent as the Entity Defendants for violations of Section 12(a)(2) by the Entity Defendants.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

## COUNT 3:  VIOLATIONS OF SECTION 4(b)(a) OF THE COMMODITIES EXCHANGE ACT

71.     Paragraphs 1 through 70 are incorporated herein by reference in the same manner as if repeated herein verbatim.

72.     Defendants violated the Federal Commodities Exchange Act (the "Commodities Act") as a result of their acts, actions, and omissions with respect to the offerings described herein.

73.     In connection with orders to make, or the making of, contracts of sale of commodities for or on behalf of Plaintiffs, via the Entity Defendants, Defendants cheated or defrauded or attempted to cheat or defraud Plaintiffs, and willfully made or caused to be made to Plaintiffs false reports or statements, by among other things: (a) misrepresenting the profits, losses, and fund balances of the Entity Defendants, (b) providing false account statements to Plaintiffs, and (c) making to Plaintiffs untrue statements of material facts and omitting other facts necessary to make the statements not misleading, all in violation of Section 4b(a) of the Commodities Act, 7 U.S.C. § 6b(a).

74.     This Complaint is filed within two years of Defendants' acts and omissions giving rise to this Plaintiffs' claims set forth in this Count.

75.     Under Section 22 of the Commodities Act, 7 U.S.C. § 25, Defendants are liable to Plaintiffs, as purchasers of interests in commodity pools (the Defendant Entity hedge fund(s)) operated by Defendants, for damages resulting from Plaintiffs' purchase of such interests from Defendants.

76.     Tuberville and Stroud, as persons who directly or indirectly control the TS Capital Entities, are under Section 9c(b) of the Commodities Act, 7 U.S.C. § 13c(b), liable jointly and severally with and to the same extent as the Entity Defendants for the Entity Defendants' violations of the Commodities Act.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

## COUNT 4: VIOLATIONS OF SECTION 4(b)(e) OF THE COMMODITIES EXCHANGE ACT

77.     Paragraphs 1 through 76 are incorporated herein by reference in the same manner as if repeated herein verbatim.

78.     On and after July 21, 2011, in connection with orders to make, or the making of, contracts of sale of commodities for future delivery (or options on such contracts), or swaps, on a group or index of securities (or interests therein or based on the value thereof), Defendants, directly or indirectly, by the use of means or instrumentalities of interstate commerce, or of the mails, or of facilities of a "registered entity" as defined in the Commodities Act, (a) employed devices, schemes, or artifices to defraud Plaintiffs, (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, and (c) engaged in acts, practices, and courses of business which operated or would operate as a fraud or deceit upon Plaintiffs, all in violation of Section 4b(e) of the Commodities Act, 7 U.S.C. § 6b(e).

79.     This Complaint is filed within two years of Defendants' acts and omissions giving rise to Plaintiffs' claims set forth in this Count.

80.     Under Section 22 of the Commodities Act, 7 U.S.C. § 25, Defendants are liable to Plaintiffs, as purchasers of interests in commodity pools (the Defendant Entity hedge fund(s)) operated by Defendants, for damages resulting from Plaintiffs' purchase of such interests from Defendants.

81.     Tuberville and Stroud, as persons who directly or indirectly control the Entity Defendants, are under Section 9c(b) of the Commodities Act, 7 U.S.C. § 13c(b), liable jointly and severally with and to the same extent as the Entity Defendants for the Entity Defendants' violations of the Commodities Act.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

## COUNT 5: VIOLATIONS OF SECTION 4o(1) OF THE COMMODITIES EXCHANGE ACT

82.     Paragraphs 1 through 81 are incorporated herein by reference in the same manner as if repeated herein verbatim.

83.     TS Management and other of the Entity Defendants are commodity pool operators pursuant to the Commodities Act. Stroud and Tuberville are associated persons of those Entity Defendants that are commodity pool operators, although they have failed to register as such.

84.     Those of Defendants that are commodities pool operators and Stroud and Tuberville, as associated persons of commodity pool operators (collectively, the "CPO Defendants"), by use of the mails or means or instrumentalities interstate commerce, directly or indirectly, (a) employed devices, schemes, and artifices to defraud Plaintiffs, and (b) engaged in transactions, practices, and courses of business which operated as a fraud or deceit upon Plaintiffs, all in violation of Section 4o(1) of the Commodities Act, 7 U.S.C. § 6o(1).

85.     This Complaint is filed within two years of the CPO Defendants' acts and omissions giving rise to Plaintiffs' claims set forth in this Count.

20

86.     Under Section 22 of the Commodities Act, 7 U.S.C. § 25, the CPO Defendants are liable to Plaintiffs, as purchasers of interests in commodity pools (the Defendant Entity hedge fund(s)) operated by the CPO Defendants, for damages resulting from Plaintiffs' purchase of such interests from the CPO Defendants.

87.     Tuberville and Stroud, as persons who directly or indirectly control the Entity Defendants, are under Section 9c(b) of the Commodities Act, 7 U.S.C. § 13c(b), liable jointly and severally with and to the same extent as the Entity Defendants for the Entity Defendants' violations of the Commodities Act.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

## COUNT 6:  FAILURES OF TUBERVILLE AND STROUD TO REGISTER AS ASSOCIATED PERSONS

88.     Paragraphs 1 through 87 are incorporated herein by reference in the same manner as if repeated herein verbatim.

89.     Stroud and Tuberville were associated with TS Management and other of Defendants that are commodity pool operators, as partners, officers, employees, consultants, or agents, in capacities involving (a) the solicitation of funds, securities, or property for a participation in a commodity pool, and/or (b) the supervision of persons so engaged, without having registered as associated persons under the Commodities Act, all in violation of Section 4k of the Commodities Act, 7 U.S.C. § 6k.

90.     Under Section 22 of the Commodities Act, 7 U.S.C. § 25, Stroud and Tuberville are liable to Plaintiffs, as purchasers of interests in commodity pools (the Defendant Entity hedge fund(s)) operated by Defendants, for damages resulting from Plaintiffs' purchase of such interests from Defendants through Stroud and Tuberville.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

### COUNT 7:  VIOLATIONS OF ALA. CODE § 8-6-17(a) (1975)

91.     Paragraphs 1 through 90 are incorporated herein by reference in the same manner as if repeated herein verbatim.

92.     In connection with the offers and sales of securities to Plaintiffs, Defendants (a) employed devices, schemes, or artifices to defraud, (b) made untrue statements of material facts or omitted to state material facts necessary in order to make statements made, in the light of the circumstances under which they were made, not misleading, or (c) engaged in acts, practices or courses of business which operated as a fraud or deceit upon Plaintiffs, all in violation of *Ala. Code* § 8-16-17(a) (1975).

93.     Moreover, Defendants knew or reasonably believed that investments in Defendants' hedge fund(s) and the underlying commodities and derivatives were not suited to Plaintiffs' needs, but nonetheless represented that Defendants' hedge fund(s) were safe investments and recommended such investments to and solicited such investments from Plaintiffs. Defendants made material misrepresentations and/or failed to disclose material

22

information relating to the unsuitability of Defendants' hedge fund(s) as investments for Plaintiffs, upon which Plaintiffs justifiably relied to their detriment.

94.     As persons who directly or indirectly control the TS Capital Entities, Tuberville and Stroud are liable jointly and severally with and to the same extent as the TS Capital Entities for violations of *Ala. Code* § 8-6-17(a) (1975) by the TS Capital Entities. *Ala. Code* § 8-6-19(c) (1975).

95.     Plaintiffs had neither knowledge of nor reason to know of their claims under the *Ala. Code* § 8-6-17(a) (1975) against these Defendants until within two years of the filing of this Complaint.

96.     Plaintiffs are entitled to recover the consideration paid for their investments in Defendants' hedge fund(s), together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received on their investments. *Ala. Code* § 8-6-19(a) (1975).

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

**COUNT 8: VIOLATIONS OF
SECTIONS 5 AND 12(a)(1) OF THE 1933 ACT**

97.     Paragraphs 1 through 96 above are incorporated herein by reference in the same manner as if repeated herein verbatim.

98.     Defendants, either directly or through other persons or entities either under the supervision and control or acting in combination or concert with them, offered and sold securities as that term is defined in Section 2(a)(1) of the 1933 Act.

99.     The securities sold by Defendants were not registered as required by Section 5 of the 1933 Act, were not securities exempt from registration, and were not sold in exempt transactions under the 1933 Act or any regulation promulgated thereunder.

100.    Under Section 12(a)(1), Plaintiffs are entitled to recover the consideration paid for their interests in Defendants' hedge fund(s) with interest thereon, less the amount of any income received thereon, upon the tender of such interests to Defendants.

101.    Tuberville and Stroud, as persons who directly or indirectly control the TS Capital Entities, are under Section 15 of the 1933 Act liable jointly and severally with and to the same extent as the Entity Defendants for the Entity Defendants' sales of unregistered securities.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

## COUNT 9: VIOLATIONS OF ALA. CODE § 8-6-4 (1975)

102.    Paragraphs 1 through 101 above are incorporated herein by reference in the same manner as if repeated herein verbatim.

103.    Defendants, either directly or through other persons or entities either under the supervision and control or acting in combination or concert with them, offered and sold securities as that term is defined in *Ala. Code* § 8-6-2(10) (1975).

104.    The securities sold by Defendants were not registered under *Ala. Code* § 8-6-4 (1975), were not exempt securities under *Ala. Code* § 8-6-10 (1975), were not sold in exempt transactions under *Ala. Code* § 8-6-11 (1975), were not securities exempt under any rule or order promulgated by the ASC, and were not subject to notice filing under the Alabama Code.

105.   This Complaint is filed within two years of Defendants' sales of unregistered securities to Plaintiffs giving rise to Plaintiffs' claims for Defendants' failure to register securities under *Ala. Code* § 8-6-4 (1975).

106.   As persons who directly or indirectly control the TS Capital Entities, Tuberville and Stroud are liable jointly and severally with and to the same extent as the TS Capital Entities for sales of unregistered securities by the TS Capital Entities. *Ala. Code* § 8-6-19(c) (1975).

107.   Plaintiffs are entitled to recover the consideration paid for their investments in Defendants' hedge fund(s), together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received on their investments. *Ala. Code* § 8-6-19(a) (1975).

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

## COUNT 10: BREACHES OF FIDUCIARY DUTIES

108.   Paragraphs 1 through 107 are incorporated herein by reference in the same manner as if repeated herein verbatim.

109.   The General Partner, Stroud, and Tuberville owed Plaintiffs fiduciary duties of care in the management and administration of the affairs of the Entity Defendants, including the duty to exercise reasonable and prudent supervision over the management, practices, controls and financial affairs of the Entity Defendants, and fiduciary duties of loyalty not to divert or otherwise use the assets of the Entity Defendants for their own gain. Stroud and Tuberville received compensation and other compensatory benefits from the Entity Defendants.

110.    The General Partner, Stroud, and Tuberville have breached such duties of care and loyalty, by failing to adequately supervise the operations and legal compliance of the Entity Defendants, co-mingling the assets of the Entity Defendants with their personal assets, misappropriating the assets of the Entity Defendants, failing to file tax returns as required, falsifying client statements and fund performance reports, and otherwise failing to comply with applicable laws and regulations, including regulations of the NFA.

111.    Defendants' breaches of fiduciary duty have caused Plaintiffs to suffer damages that are undeterminable at present time, because Plaintiffs do not have credible information regarding the current location and amounts of their funds.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

### COUNT 11:  UNJUST ENRICHMENT

112.    Paragraphs 1 through 111 are incorporated herein by reference in the same manner as if repeated herein verbatim.

113.    As set forth above, Plaintiffs have paid significant sums to Defendants, who have had the use of these funds and the proceeds therefrom. Defendants have unjustly received substantial benefits as a result of Plaintiffs' investments.

114.    The use of the proceeds by Defendants constitutes an unjust enrichment of Defendants at Plaintiffs' expense.

115.    As a result of the unjust enrichment of Defendants, Plaintiffs have been damaged in an amount in excess of $1,760,000.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek the disgorgement by Defendants of all amounts improperly received by them and compensatory damages, interest, return of investment, court costs, attorney's fees, and any other such relief that this Court deems appropriate.

## COUNT 12: NEGLIGENCE OR WANTONNESS

116.    Paragraphs 1 through 115 are incorporated herein by reference in the same manner as if repeated herein verbatim.

117.    Defendants had duties and obligations to Plaintiffs which they by their actions have breached.

118.    The breaches of those duties proximately caused harm to Plaintiffs.

119.    As a direct result of their negligence or wantonness, Defendants caused Plaintiffs' damages.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, and any other such relief that this Court deems appropriate.

## COUNT 13: NEGLIGENT OR WANTON SUPERVISION

120.    Paragraphs 1 through 119 are incorporated herein by reference in the same manner as if repeated herein verbatim.

121.    Tuberville had a duty to supervise the actions of Stroud and the Entity Defendants.

122. Tuberville breached his duty to supervise, and as a proximate result Plaintiffs were injured and damaged by Stroud and the Entity Defendants' tortuous conduct with respect to Plaintiffs' investments.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, and any other such relief that this Court deems appropriate.

## COUNT 14: FRAUDULENT MISREPRESENTATION

123. Paragraphs 1 through 122 are incorporated herein by reference in the same manner as if repeated herein verbatim.

124. The misrepresentations of Defendants described above concerned material facts and were known by Defendants to be false when made, or were made recklessly by Defendants with knowledge that they had insufficient information upon which to base such representations. Defendants intentionally or recklessly withheld all of the material facts they failed to disclose as set forth above. All such misrepresentations and omissions were made or withheld for the purpose of inducing Plaintiffs, in reliance thereon, to invest in the Entity Defendants.

125. Plaintiffs reasonably relied upon all of Defendants' misrepresentations and omissions and thereby were induced to purchase the investments solicited and offered by Defendants to the damage and detriment of Plaintiffs.

126. By making the misrepresentations and omissions described above, Defendants have engaged in fraudulent acts and practices in violation of Alabama common law and *Ala. Code* §§ 6-5-101, 103, and 104.

127.    The false representations and omissions of Defendants have caused Plaintiffs to suffer damages that are undeterminable at present time, because Plaintiffs do not have credible information regarding the current location and amounts of their invested funds.

128.    Plaintiffs could not have discovered the fraudulent misrepresentations any earlier than they did and they bring suit within two years of its discovery.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, and any other such relief that this Court deems appropriate.

## COUNT 15:   FRAUDULENT SUPPRESSION

129.    Paragraphs 1 through 128 are incorporated herein by reference in the same manner as if repeated herein verbatim.

130.    The relationship between Plaintiffs and Defendants was such that Defendants had a duty to disclose certain material facts.

131.    Rather than disclosing these material facts, Defendants suppressed or concealed them, which constitutes fraud in violation of § *Ala. Code* 6-5-102 (1975) and Alabama common law.

132.    The suppression and concealment of these material facts induced Plaintiffs to act by investing with Defendants to their damage and detriment.

133.    The fraudulent suppression of material facts by Defendants caused financial injury to Plaintiffs.

134.    Plaintiffs could not have discovered the fraudulent suppressions any earlier than they did, and they bring suit within two years of its discovery.

29

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, and any other such relief that this Court deems appropriate.

## COUNT 16:  CONVERSION

135.    Paragraphs 1 through 134 are incorporated herein by reference in the same manner as if repeated herein verbatim.

136.    Stroud and/or Tuberville have wrongly converted and assumed ownership of assets of Plaintiffs as a result of their investments in the Entity Defendants, in defiance of Plaintiffs' rights of immediate possession of such assets.

WHEREFORE, Plaintiffs seek judgment against Defendants and seek compensatory damages, punitive damages, interest, return of investment, court costs, and any other such relief that this Court deems appropriate.

## CONCLUSION

All of the foregoing considered, Plaintiffs pray for judgment against all Defendants and such damages and other relief as follows:

(a)    Awarding compensatory and punitive damages in favor of Plaintiffs against all Defendants, jointly and severally, for the damages sustained as a result of the wrongdoings of Defendants, together with interest thereon;

(b)    Ordering Defendants to disgorge all amounts improperly received by them from Plaintiffs, together with interest thereon;

(c)    Under Count 2, awarding Plaintiffs the right to rescind their investments in Defendants' hedge fund(s) and receive from all Defendants, jointly and severally, a return of the consideration paid for such investments, with interest thereon, less the amount of any income received by Plaintiffs' on such investments;

(d)    Under Counts 7 and 9, awarding Plaintiffs the right to rescind their investments in Defendants' hedge fund(s) and receive from all Defendants, jointly and severally,

a return of the consideration paid for such investments, together with interest at six percent per year from the date of payment, court costs and reasonable attorneys' fees, less the amount of any income received by Plaintiffs' on such investments;

(e)     Awarding Plaintiffs the fees and expenses incurred in this action including reasonable allowance of fees for Plaintiffs' attorneys and experts;

(f)     Granting equitable and/or injunctive relief as permitted by law, equity, and federal and state statutory provisions sued on hereunder; and

(g)     Granting such other and further relief as the Court may deem proper and just.

Date: February 24, 2012.

### PLAINTIFFS DEMAND TRIAL BY JURY

Respectfully submitted,

ROBERT T. MEADOWS, III (MEA012)
BARBARA J. WELLS (GIL037)

**ATTORNEYS FOR PLAINTIFFS**

Capell & Howard, P.C.
P.O. Box 2069
Montgomery, AL
rtm@chlaw.com
bjw@chlaw.com

(334) 241-8000 - phone
(334) 323-8888 - fax

PLEASE SERVE THE COMPLAINT ON:

**Thomas Hawley Tuberville**
**9018 County Road 6860**
**Lubbock, TX 79407-5923**

For Defendant Thomas H. Tuberville and each of the following entities:
  TS Capital Partners, LLC
  TS Capital Partners
  TS Capital Management, LLC
  TS Capital GP, LLC
  TS Capital Fund, L.P.

**John David Stroud**
**1241 Walker Circle**
**Auburn, AL  36830-7266**

For Defendant John David Stroud and each of the following entities:
  TS Capital Partners, LLC
  TS Capital Partners
  TS Capital Management, LLC
  TS Capital GP, LLC
  TS Capital Fund, L.P.
  Stroud Capital Management, LLC
  Stroud Capital GP, LLC
  Stroud Capital Fund, L.P.