**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JOHN A. ABRAMS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 3:12-cv-177-MHT** |
| | ) | |
| **THOMAS H. TUBERVILLE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**PLAINTIFFS' RESPONSE IN OPPOSITION TO**</u>
<u>**TUBERVILLE'S MOTION TO DISMISS THE COMPLAINT**</u>
<u>**AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**</u>

Plaintiffs John A. Abrams, Priscilla W. Abrams, Debra Clark, Baron J. Lowe, Melanie D. Lowe, Fredrick Glen Williams, and Kristy A. Williams (collectively "Plaintiffs"), by and through their undersigned counsel, respectfully submit their opposition to the Motion of Defendant Thomas Tuberville to Dismiss the Complaint and Incorporated Memorandum of Law (Doc. No. 14).  For the reasons set forth below, Plaintiffs contend that the motion of Defendant Thomas Tuberville ("Tuberville") should be denied.  Further responding, Plaintiffs seek leave of Court to file an amendment to the Complaint.

## I.      INTRODUCTION

Tuberville, who is best known for his play-calling on the college gridiron, has been calling the shots for more than just football teams.  Tuberville begins his motion by mischaracterizing the Plaintiffs' claims in the Complaint stating that "the Complaint seeks to portray Coach Tuberville as a 'con man' who working arm-in-arm with Defendant David Stroud duped Plaintiffs out of nearly $2,000,000."[1]  (Doc. No. 14 at p. 1).  Tuberville does not dispute

---

[1] Plaintiffs refer to Defendant John David Stroud throughout this Response as "Stroud."

Plaintiffs' claims that they were misled and defrauded out of nearly $2,000,000, but rather predicates his defense to liability on his assertion that Tuberville "gave Stroud $450,000 to invest and lost it all."  In addition to being misleading and predicated on "facts" not properly before this Court on a motion pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), that assertion is absolutely immaterial to the issues this lawsuit presents.

Like the piano player in the house of ill-repute who was surprised to find that nefarious activities were being conducted in the house, Tuberville claims ignorance of the massive fraud that occurred and many misrepresentations that were made by him and the other Defendants named in the Complaint.  However, unlike the piano player, whose lack of knowledge, although surprising, might be excused,[2] Tuberville was an indirect owner and manager and consequently one of the ultimate and controlling authorities of the entities in which the Plaintiffs ultimately invested and therefore was and is responsible for managing and supervising the activities of those entities.  Consequently, even if Tuberville did not know what was going on, he should have.  It was his duty and responsibility to know or, at a minimum use reasonable efforts to try to determine.  As set forth below, Tuberville has responsibility and liability for the harm to Plaintiffs in this cause.  Moreover, in a separate filing on this date, Plaintiffs will seek leave to file an amended complaint setting forth further factual predicates which belie Tuberville's assertions that he was merely another duped investor.

## II.     STANDARD OF REVIEW

Plaintiffs do not dispute Tuberville's assertion that *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and its progeny establish the applicable standard of review for the Court to apply in evaluating the sufficiency of Plaintiff's allegations in the Complaint.  Plaintiffs contend

---

[2] Tuberville asserts on page 6 of his motion (Doc. No. 14) that he should be excused from liability due to his lack of knowledge of his partner's misconduct.

that the Complaint contains sufficient factual allegations which plausibly suggest that they are entitled to relief under the various legal theories identified.  The Complaint is not a string of threadbare recitals of the elements of the cause of action supported by conclusory statements.  It contains a number of key facts which when proven will establish Tuberville's liability to Plaintiffs.  Noticeably absent from Tuberville's discussion of the appropriate analysis of a motion to dismiss are the well-settled axioms that such a motion pursuant to Rule 12(b)(6) must take the factual allegations of the Complaint as true and that the Court must limit its analysis to the face of the Complaint.  *See, e.g., Nelson v. Campbell*, 541 U.S. 637, 640 (2004) (where a court is considering dismissal of a complaint at the pleading stage, it must assume the allegations of the complaint are true); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007) (in considering a defendant's motion to dismiss, a district court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the plaintiff).  The district court should consider only the pleadings and the exhibits attached thereto.  *See, e.g., St. George v. Pinellas County,* 285 F.3d 1334, 1337 (11th Cir. 2002); *Grossman v. Nationsbank, N.A.,* 225 F.3d 1228, 1231 (11th Cir. 2000) (the court limits its consideration to the pleadings and exhibits attached thereto); *Danny Lynn Elec. & Plumbing, LLC v. Veolia ES Solid Waste Se., Inc.*, No. 2:09-CV-192-MHT, 2011 WL 2893629 (M.D. Ala. July 19, 2011) (Thompson, J.).  Tuberville's motion to dismiss fails to conform to any of these bedrock principles.  It recites at length from documents other than the Complaint[3] and asserts facts not in the Complaint without citing to

---

[3]  For example, Tuberville injects numerous references to declarations filed in conjunction with an enforcement action the CFTC brought against Stroud and several of the entity defendants.  Tuberville faults these declarations, which are not appropriately before this Court at this juncture, for failing to include information about Tuberville. Given that the CFTC was not bringing an enforcement action directly against Tuberville, it is not at all surprising that the CFTC did not solicit information from the Plaintiffs about Tuberville.  This does not mean that such information does not exist.

anything as support for them.[4]

### III.    FACTS ALLEGED

Given that Tuberville entirely overlooks the factual allegations against him in the Complaint, Plaintiffs will provide a brief overview of them here.  Stroud and Tuberville jointly founded: TS Capital Partners, TS Capital Partners, LLC, TS Capital Fund, L.P., TS Capital GP, LLC, TS Capital Fund, LLC, and TS Capital Management, LLC.  (Compl. at ¶¶ 8-14).  TS Capital GP, LLC, a Delaware limited liability company served as the General Partner for TS Capital Fund, L.P.  (Compl. at ¶¶ 10, 33). As the sole General Partner, TS Capital GP, LLC, was and is responsible for managing the business and affairs of TS Capital Fund, L.P.  (Compl. at ¶ 33).  Plaintiffs subscribed for and purchased limited partner interests in TS Capital Fund, LP, which Plaintiffs contend constituted securities.  (Compl. at ¶¶ 25-31).  At all times relevant to this action, Stroud and Tuberville each owned one-half of the equity interest in TS Capital GP, LLC, the General Partner.  (Compl. at ¶ 33).  As the managers and members of TS Capital GP, LLC, Tuberville and Stroud controlled the management and business affairs of TS Capital, GP, LLC and of TS Capital Fund, L.P.  *Id.*

Stroud and Tuberville were also the owners, members, and managers of TS Capital Management, LLC.  (Compl. at ¶ 35).  According to the Offering Memorandum dated June 23, 2009, this entity, which was wholly owned and managed by Stroud and Tuberville, provided

---

[4] Some of the most glaring of these factual assertions without any basis in the record before the Court are: (1) the amount of Tuberville's investments with Stroud; (2) the alleged losses Tuberville suffered from his investment; (3) Tuberville's current employer and his representations about the distance from the entities' operations in Alabama and the place of Tuberville's employment.  Moreover, Plaintiffs contend that some of these facts are disputed facts.  While Tuberville may have been serving as the head football coach at Texas Tech University when some of the Plaintiffs invested with the Defendants, that was not the case with all of the Plaintiffs.  Moreover, even if the statements about Tuberville's location and employment were true, they are irrelevant to the evaluation of the motion to dismiss because Tuberville continued to be one of the two managers and members of TS Capital GP, LLC, the general partner of TS Capital Fund, L.P., while also coaching the Red Raiders.

investment management services to the TS Capital Fund, L.P.  *Id.*  In return, this entity, which was wholly owned and managed by Stroud and Tuberville, was entitled to a management fee of 2% per annum of the net assets of TS Capital Fund, L.P. and a Performance Allocation of any net profits.  *Id.*[5]

Tuberville and Stroud touted their roles with the entity defendants to the public.   Stroud and Tuberville provided business cards to one or more Plaintiffs that identified Stroud as President and Portfolio Manager of "T.S. Capital" and Tuberville as Managing Partner of "T.S. Capital."   (Compl. at ¶ 36).    The Offering Memorandum summarizes Tuberville's responsibilities as follows:

> Tommy Tuberville, the co-founder of TS Capital Management ("TSCM"), is responsible for the investment direction, capital raising, and the day-to-day oversight of business decisions of TSCM.   In this capacity, Mr. Tuberville provides the fund with strategic direction and guidance while overseeing investment opportunities.   Mr. Tuberville also evaluates and researches each private equity investment opportunity considered by TSCM.

(Compl. at ¶ 36).  Furthermore, Tuberville touted his work at T.S. Capital Partners, including drumming up business for a big-time hedge fund, in a news story which appeared in a significant

---

[5]   The various entities formed in relation to the events giving rise to this Complaint are complex, inter-related, and often improperly formed.    For this reason, it has been difficult for Plaintiffs and their counsel to identify with certainty each and every act of each and every player.   That said, the understanding of the facts is evolving and one of  the reasons Plaintiffs seek leave to amend their Complaint is to provide further detail and newly discovered information arising from informal investigation or newly understood implications of information previously available.  Plaintiffs are now aware of at least one error in Paragraph 35 of the Complaint relating to the manner in which the Performance Allocation was to be paid.  Plaintiffs alleged that Stroud and Tuberville were entitled to the Performance Allocation by virtue of the management services provided to the TS Capital Fund, L.P.   In fact, the Performance Allocation was payable to the General Partner (TS Capital GP, LLC), an entity wholly owned by Tuberville and Stroud.  The distinction is one without a difference because both forms of compensation were to end up in the pockets of Tuberville and Stroud, but the allegation should be corrected regardless.   Given the disarray, deficiencies, and deception associated with the myriad entities, Plaintiffs submit that it would be inequitable to allow Defendants to benefit from all that they did wrong by faulting a lack of specificity with regard to Plaintiffs' allegations concerning that which Defendants obscured either deliberately or through gross and reckless disregard for their legal obligations.

Alabama news outlet in July of 2009.  (Compl. at ¶ 27).  Indeed, there is evidence that Tuberville did directly and indirectly solicit investors in the hedge fund he and Stroud created.  The Offering Memorandum, the TS Capital website, and other written and oral communications were replete with untrue representations and fraudulent assertions.  (Compl. at ¶¶ 38-49).  Tuberville and the other defendants failed to comply with numerous requirements for sale of securities and management of a hedge fund under state and federal law.  *Id.*

Additionally, Stroud and Tuberville failed to ensure that the various entities for which they were responsible took important organizational and administrative actions, including timely filing tax returns, complying with regulatory requirements, obtaining appropriate registrations to transact business, and maintaining a registered agent as required by law.  (Compl. at ¶ 50).  In November of 2011, most Plaintiffs demanded a refund of and an accounting for their investments.   Tuberville and Stroud received the written demands and provided some information in response, but failed to return any amount to Plaintiffs or provide the requested accountings.  (Compl. at ¶ 50).  Additionally, as alleged in the Complaint at paragraph 34, Tuberville and Stroud utterly failed to provide copies of the NFA Notice to Plaintiffs as required.

When the house of cards fell, Tuberville directed the end of operations.  On or about September 28, 2011, Tuberville ordered the operations of TS Capital Fund stopped and told at least two of the Plaintiffs that all of the funds of all investors would be returned to them.  (Compl. at ¶ 49).  Tuberville did not follow through on this promise and Plaintiffs were forced to resort to this legal action in order to be made whole.

## IV.    ARGUMENT

### A.    Tuberville Incorrectly Asserts That There Is No Individual Right Of Action For Violations Of 7 U.S.C. § 6k

Relying entirely on two cases decided by federal district courts in 1983, Tuberville asserts that he cannot be liable for his failure to have registered as an associated person with the Commodities Futures Trading Commission in violation of 7 U.S.C. § 6k because "individual plaintiffs have no private right of action for violations of that provision." (Doc. No. 14 at p. 18) While this might have been the state of the law in 1983, Tuberville's argument overlooks the fact that the statute was amended by the Futures Trading Act of 1982 to provide for a general private right of action for individuals for violations of § 6k which accrued on or after enacted Jan. 11, 1983. *See, e.g., Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co. Ltd.*, 484 U.S. 97, 106 (1987) (recognizing that Congress explicitly authorized a private right of action for violations of the Commodities Exchange Act when it enacted Section 22 of the Futures Trading Act of 1987 codified at 7 U.S.C. § 25); *Damato v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 878 F. Supp. 1156, 1161 (N.D. Ill. 1995) (same). Interestingly, the Complaint itself contains a citation to 7 U.S.C. § 25 (Compl. at p. 90), yet Tuberville's argument ignores the plain language of that statutory section:

> (a)  Actual damages; actionable transactions; exclusive remedy.
>> (1)  Any person (other than a registered entity or registered futures association) who violates this Act [*7 U.S.C.S. §§ 1* et seq.] or who willfully aids, abets, counsel, induces, or procures the commission of a violation of this Act [*7 U.S.C.S. §§ 1* et seq.] shall be liable for actual damages resulting from one or more of the transactions referred to in subparagraphs (A) through (D) of this paragraph and caused by such violation to any other person –
>> ***

(C) who purchased from or sold to such person or placed through such person an order for the purchase or sale of
\*\*\*

(iii) an interest or participation in a commodity pool.

7 U.S.C. § 25(a)(1)(C).  Furthermore, § 25 makes it plain that the rights of action authorized by this provision are remedies for violations of 7 U.S.C. §§ 1, *et seq*. which are "available to any person who sustains loss as a result of any alleged violations of the Act."  7 U.S.C. § 25(a)(2).  Thus, to the extent that Tuberville's motion to dismiss is predicated on a contention that there exists no remedy to individuals harmed by violations of the Commodity Exchange Act, it must be denied as a matter of law.

### B.      Plaintiffs Have Alleged Fraud With Particularity.

Plaintiffs do not dispute that their fraud-based claims (Counts One, Two, Three, Four, Five, Seven, Fourteen, and Fifteen) are subject to the requirements of Fed. R. Civ. P. 9(b) which requires that in "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  That Rule further provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  Furthermore, the Private Securities Litigation Reform Act ("PSLRA") which Tuberville invokes does indeed impose additional requirements on the allegations with respect to some, *but not all*,[6] of Plaintiffs' fraud claims.   Nevertheless, the very specific allegations of the nature of misrepresentations which Plaintiffs have discovered with respect to their purchase of limited

---

[6]  Plaintiffs submit that the PSLRA, and in particular its requirements with respect to the pleading of scienter, apply only to the alleged violations of § 10(b) of the 1934 Securities and Exchange Act (Count One).  It does not apply to the other fraud allegations in the other counts which are subject only to Federal Rule of Civil Procedure 9(b).

partner interests in the TS Capital Fund, L.P. more than satisfy the specificity requirements.[7]

Importantly, Tuberville does not deny the Plaintiffs' claims that there were fraudulent misrepresentations made to the Plaintiffs, nor does he dispute that Plaintiffs incurred substantial losses as a result. Tuberville attempts to avoid liability by challenging the sufficiency and specificity of the factual allegations. As is expressly stated in the Complaint and will be demonstrated further below, the Complaint specifically identifies a number (but not obviously or possibly all) of the misrepresentations made by the Defendants (including Tuberville) to the Plaintiffs in disclosure documents provided to them by the Defendant investing entities. These representations are attributable to Tuberville as a matter of law by virtue of his role as a manager of the general partner of the limited partnership that issued the securities at issue. His position and role as a manager of TS Capital GP, LLC provided him with direct and joint control over the actions of TS Capital GP, LLC, and therefore over TS Capital Fund, LP.

Plaintiffs have specified many statements of which they are currently aware which they now believe to have been misleading and the reasons why they have that belief. The factual predicate for this liability is specifically alleged in the Complaint along with the nature of the fraudulent misrepresentations. (Compl. at ¶¶ 33-49). Indeed, the Complaint quite specifically identifies misrepresentations, such as the statement that TS Capital Fund, L.P. would be audited at the end of each fiscal year by Rothstein Kass, a certified public accounting firm with offices in New York City and elsewhere. (Compl. at ¶ 42). This was not true. *Id.* Such a fraudulent misrepresentation clearly gave an undue air of legitimacy to the investment upon which Plaintiffs' relied. Similarly, Defendants made fraudulent misrepresentations that Lovoy Summerville & Shelton would serve as the third-party administrator for TS Capital Fund, LP.

---

[7] Plaintiffs respectfully submit that Tuberville's strategy of citing only to the paragraphs under the counts without making any reference to the factual allegations contained in ¶¶ 36, 38-49, which are incorporated by reference in each and every count, results in a very distorted reading of the Complaint.

(Compl. at ¶ 43).  Defendants falsely represented that Mintz, Leven, Cohn, Ferris, Glovsky and Popeo served as legal and tax counsel to TS Capital Fund, L.P.  (Compl. at ¶ 44).  The Offering Memorandum represents that the General Partner, an entity Tuberville managed and of which he was an equal member with Stroud, maintained a capital account in TS Capital Fund, L.P. of at least $1,000,000; this was not true.  (Compl. at ¶ 45).  Indeed, paragraphs 38 through 49 of the Complaint spell out these and other specific misrepresentations in detail.

A reading of Tuberville's Motion would indicate that, in order for him to be liable, he must have personally spoken with each of the Plaintiffs about their specific investment and utter each and every word of each misrepresentation himself.  That is not the way securities are typically sold and personal, direct conversation is not a requirement of the securities laws.  Indeed, most representations and disclosures regarding the purchase of a security are made by the written disclosure documents, such as the Confidential Offering Memorandum of TS Capital Fund L.P., which were provided to the Plaintiffs in connection with their investments in that entity.  The Complaint repeatedly quotes from the Memorandum and alleges the factual basis on which Tuberville's liability for such statements is based.  If the Court finds these allegations deficient, Plaintiffs ask for leave to amend their allegations.

In support of its contention that the Complaint improperly relies on "group pleading," Tuberville invokes a number court decisions from outside the Eleventh Circuit.  (Doc. No. 14 at p. 11).  While Tuberville mentions *Phillips v. Scientific-Atlanta, Inc.*, 374 F.3d 1015 (11th Cir. 2004) (holding that the PSLRA allows the aggregation of facts to support an inference of scienter and that to proceed beyond the pleading stage, a plaintiff must allege facts sufficiently demonstrating each defendant's state of mind regarding his alleged violations), on a different point, he fails to acknowledge that in that very case the Eleventh Circuit declined to decide the

issue of whether "group pleading" continues to be a viable practice in the wake of the PSLRA. *Id.* at 1018-19.  While the Eleventh Circuit acknowledged that some courts had held that "group pleading" was not permissible after the PSLRA, it declined to rule on that issue.  *Id.*  Thus, this question of law remains an open one in the Eleventh Circuit.  Numerous district courts within the Eleventh Circuit have continued to allow the use of "group pleading" in cases such as this one despite the language of the PSLRA and in so doing, most note that it is an open question on which the Eleventh Circuit has failed to opine.  *See, e.g., Murdeshwar v. Search Media Holdings Ltd.*, No. 11-Civ-20549, 2011 WL 7704347, at *12 (S.D. Fla. Aug. 8, 2011) (noting that the Eleventh Circuit Court of Appeals has not decided the issue and following cases allowing use of group pleading after PSLRA); *Sides v. Simmons,* No. 07-80347-Civ, 2007 WL 2819372, at *5 (S.D. Fla. Sept. 24, 2007) (holding that the group pleading doctrine applies post-PSLRA); *In re Spectrum Brands, Inc. Sec. Litig.*, 461 F. Supp. 2d 1297, 1305 n.2 (N.D. Ga. 2006) (same); *In re AFC Enters., Inc. Sec. Litig.*, 348 F. Supp. 2d 1363, 1371 (N.D. Ga. 2004) (holding that the rationale supporting use of the group pleading doctrine remains persuasive even after the PSLRA and allowing plaintiffs to proceed past motion to dismiss using said doctrine); *In re World Access, Inc. Sec. Litig.*, 119 F. Supp. 2d 1348, 1357 (N.D. Ga. 2000) (same).

Given the size and nature of the Entity Defendants in this case, it is not at all unreasonable to infer from the facts alleged that Tuberville, who is alleged by Defendants' own documents to have had responsibility for providing investment direction, raising capital, engaging in day-to-day oversight of business decisions, providing strategic direction and guidance while overseeing investment opportunities, and evaluating and researching each private equity investment opportunity considered, is a responsible party.  (Compl. at ¶ 36).  Indeed, Tuberville made no secret of his new business enterprise and drummed up business for it by

capitalizing on interests within Alabama with respect to the activities of the former coach of one of its two college football powerhouses. (Compl. at ¶ 37). This case does not involve a publicly-held company with a large board of directors and many officers and other persons responsible for the disclosures made on behalf of the investing entities. Indeed, there were only two principals, Tuberville and Stroud, and only a limited number of entities. In Tuberville's case, those entities were principally the TS Capital entities (as identified in the Complaint). It is not improper for Plaintiff to seek to hold for both of the principals of the TS Capital entities to be responsible for all disclosures made by and on behalf of those entities. Moreover, as cited in the Complaint, Tuberville's duties were described broadly and encompassed insuring compliance with all such matters.

### C.     Tuberville Is Liable As A "Control Person."

While acknowledging that every person who directly or indirectly controls any person liable under any provision of the 1934 Securities Exchange Act and the 1933 Securities Act shall be jointly and severally liable with the controlled person, Tuberville contends that Plaintiffs have failed to allege a sufficient basis for him to be liable as a control person under § 20(a) of the 1934 Securities Exchange Act and under § 15 of the 1933 Securities Act. That contention is incorrect. Plaintiffs have alleged that Tuberville had the right to control the means and manner in which Stroud and the TS Capital Entity Defendants acted. (*See, e.g.,* Compl. at ¶¶ 33 & 36). Tuberville was an equal member (which is analogous to a partner) with Stroud in TS Capital GP, LLC, which acted as the General Partner to TS Capital Fund, L.P., the issuer of the limited partner interests in TS Capital Fund, L.P. *Id.* Furthermore, Tuberville and Stroud were both managers and members of TS Capital GP, LLC and as managers they directed and controlled that company and the partnership it controlled. *Id.* As Plaintiffs have alleged in the Complaint,

12

the Offering Memorandum describes a much more active role for Tuberville than he acknowledges in his motion.  Consequently, either the Offering Memorandum was false or Tuberville has misled the Court.  Neither explanation provides support for a proper basis for dismissal of the Complaint.  This specific description of Tuberville's duties and responsibilities is part of the factual allegations of the Complaint which for purposes of this motion the Court and Tuberville must accept as true. (Compl. at ¶ 36).  Tuberville, a co-founder with Stroud of these entities, had the right and responsibility to exercise properly and prudently the control he had.  His failure to do so does not excuse him from liability, but to the contrary it is a cause and basis for his having liability to Plaintiffs for their consequential injuries.

> ### D.    Counts Eight And Nine Are Not Due To Be Dismissed.

With respect to Tuberville's arguments respecting Counts 8 and 9 of the Complaint, Plaintiffs submit that they have adequately alleged a factual predicate for Tuberville's liability on these counts.   Contrary to the unsupported assertions in the motion that Plaintiffs must allege facts establishing that Tuberville offered or sold securities to each Plaintiff, Plaintiffs rely on the alleged facts relating to Tuberville's position as a manager of the general partner of the partnership which issued and sold the securities.  To the extent Tuberville's arguments fail to acknowledge or assume the factual validity of Plaintiffs' specific allegations with respect to his ownership interest and manager duties, which were co-equal with those of  Stroud, the motion is not well-taken.

> ### E.    Plaintiffs Have Sufficiently Alleged A Basis For Tuberville's Fiduciary Liability.

As previously explained above, the Complaint alleges that Tuberville was one of the two managers and members of TS Capital GP, LLC and that this entity served as the general partner to TS Capital Fund, L.P.  Although Tuberville would have owed fiduciary duties to the Plaintiffs

if the entities at issue had been corporations, his duties and responsibilities were even greater because he and Stroud organized the investing entities as partnerships of which (depending on which document prepared by the Defendants is considered), he was a general partner and/or the managing member of a general partner. General partners owe to the partnership and the other partners the highest standards of conduct. *See, e.g., Meinhard v. Salmon*, 164 N.E. 545 (N.Y. 1928) and its progeny.

Tuberville attempts to disclaim any responsibility for the slipshod operations of TS Capital Partners and its affiliated organizations. However, his disclaimers are hollow and unsupported or, at minimum, raise factual issues that should not be addressed and cannot be properly resolved at this early stage in the proceedings, when this Court should be accepting as true the factual allegations in the Complaint. These factual allegations against Tuberville are not only plausible, but are entirely logical and naturally flow from the customary duties and responsibilities of a manager of an LLC and a general partner of a limited partnership. *See* DEL. CODE ANN. tit. 6, § 15-404 (2011) (general partner owes duties of loyalty and care to partnership); *Auriga Capital Corp. v. Gatz Props., LLC*, No. C.A. 4390-CS, 2012 WL 361677, at *8-*11 (Del. Ch. Jan. 27, 2012) (imposing duties of loyalty and care on managers of LLC by default); *Douzinas v. Am. Bureau of Shipping, Inc.,* 888 A.2d 1146, 1149-50 (Del. Ch. 2006) (same); *Metro Commc'n Corp. BVI v. Advanced Mobilecomm Techs. Inc.,* 854 A.2d 121, 153 (Del. Ch. 2004) (same); *VGS, Inc. v. Castiel,* No. C.A. 17995, 2000 WL 1277372, at *4-5 (Del. Ch. Aug. 31, 2000), *aff'd* 781 A.2d 696 (Del. 2001) (same). The Plaintiffs' claims and the factual allegations in the Complaint are more than sufficient to raise a right to relief above the speculative level as *Twombly* and its progeny require. The Complaint alleges with specificity Plaintiffs' investments made, the misrepresentations made to the Plaintiffs, Tuberville's

relationship to the investing entities, his responsibility for those misrepresentations, and the resulting losses Plaintiffs incurred.

As a general partner of a partnership, Tuberville was legally entitled to full disclosure by Stroud of anything he did on behalf of the partnership and Tuberville had the right to withhold his consent to any such actions. *See* DEL. CODE ANN. tit. 6, § 15-403(a) (2011) ("Each partner and the partnership shall provide partners . . . access to the books and records of the partnership and other information concerning the partnership's business and affairs . . . ."); *Id.* § 15-102(f) ("A partner's knowledge, notice or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to or receipt of a notification the partnership . . . ."). As co-managers of TS Capital GP, LLC, Tuberville and Stroud were and are both responsible for conferring and agreeing on the appropriate management and operation of that entity. *See* 6 DEL. CODE ANN. tit. 6, § 18-404(d) (2011) (unless otherwise specified in the operating agreement, managers are to make decisions by vote at meeting of the managers); *Auriga Capital Corp.*, 2012 WL 361677, at *8-*11 (imposing duties of loyalty and care on managers). Furthermore, the proposed amendment to the Complaint will provide additional detail on this point.

In addition to the misrepresentations included in the Offering Memorandum regarding the engagement by TS Capital Fund, L.P. of legal counsel and auditors, the failure of the managers and/or general partners, including Tuberville, to engage such advisors deprived TS Capital Fund, L.P. and hence Plaintiffs, who purchased limited partners interests, and other such purchasers, of the protections that would be afforded by independent advisors. Indeed, it is likely that, if not entirely prevented, some and possibly much of the misappropriations and misdealing would have

been discovered sooner if TS Capital Fund, L.P. had had such advisors.  The determination of the identity and existence of legal counsel and accountants would be a fundamental element of due diligence.   If Tuberville had performed even minimal due diligence, doubtless substantial amounts of the Plaintiffs' losses could have been prevented.   That a nationally known and well-respected law firm and certified public accounting firm were identified as the Partnership's legal counsel and auditors magnified the degree of the problems caused by Tuberville's failure to perform properly and prudently his fiduciary duties.

Contrary to Tuberville's claim, *Brown v. Enstar Grp., Inc.*, 84 F.3d 393 (11th Cir. 1996), in no way supports dismissal of Plaintiffs' claims against Tuberville.  The dispositive factor in *Brown* was that the former chairman of Kinder Care could not be a control person for liability with respect to misstatements in a prospectus prepared months after he resigned from his position as chairman.  *Id.* at 396-97.  Unlike that former chairman in *Brown*, Tuberville is alleged to have held his positions with the various entities before, during and after the fraudulent statements alleged.  The allegations of the Complaint are sufficient to establish Tuberville's liability as a control person.  If and to the extent that the Court rules otherwise, Plaintiffs seek leave to amend the Complaint to address any deficiencies the Court identifies.

### F.    Plaintiffs Adequately Allege A Factual Basis For The Negligence Claims.

Plaintiffs have alleged the factual basis for Tuberville's legal duty to Plaintiffs.   (Compl. at ¶¶ 25-30, 33, 36).   Moreover, they have alleged a factual basis for how Tuberville's negligence in the performance of his duties, which he appears to admit when he argues he was 1,000 miles away attending to other matters rather than supervising the operations of the TS Capital Entities and Stroud.  The allegations are sufficient to satisfy the pleading obligations under *Twombly* and its progeny.  If and to the extent the Court disagrees, Plaintiffs seek leave to

amend.

**G.      Plaintiffs Seek Leave To Replead The Conversion And Unjust Enrichment Claims.**

Plaintiffs seek leave to amend their allegations with respect to the Conversion and Unjust Enrichment claims.

## V.      CONCLUSION

For the foregoing reasons, Plaintiffs submit that the Motion of Defendant Thomas Tuberville to Dismiss the Complaint and Incorporated Memorandum of Law (Doc. No. 14) is due to be denied.  Additionally, Plaintiffs seek leave of the Court to be allowed file an amended complaint, a copy of which is attached as Exhibit "1" to this response.  If the amendment of the complaint is allowed, Plaintiffs submit that the Motion of Defendant Thomas Tuberville to Dismiss the Complaint and Incorporated Memorandum of Law (Doc. No. 14) is due to be denied as moot.

Respectfully submitted on April 27, 2012.


/s/ Barbara J. Wells_____
HENRY H. HUTCHINSON (HUT007)
ROBERT T. MEADOWS, III (MEA012)
BARBARA J. WELLS (GIL037)

*Attorneys for Plaintiffs*

CAPELL & HOWARD, P.C.
150 South Perry Street (36104)
Post Office Box 2069
Montgomery, AL 36102-2069
Email: hh@chlaw.com
Email: rtm@chlaw.com
Email: bjw@chlaw.com
Telephone: (334) 241-8000
Facsimile: (334) 323-8888

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 27th day of April 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record who have appeared.

I hereby further certify that on this the 27th day of April 2012, I have served a copy of the foregoing on Jason Matthew Folmar, who has identified himself to the undersigned as counsel for John David Stroud and has further indicated that he is willing to accept service on behalf of all of the entity defendants named in this action, in this matter by placing a copy in the United States mail, postage prepaid and properly addressed to:

Jason Matthew Folmar, Esq.
Post Office Box 312495
Enterprise, AL 36331-2495
Email: folmarlaw@live.com

/s/ Barbara J. Wells_____
OF COUNSEL