IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION

| | | |
|---|---|---|
| JOHN A. ABRAMS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 3:12cv177-MHT |
| | ) | (WO) |
| THOMAS H. TUBERVILLE, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Plaintiffs John A. Abrams, Priscilla W. Abrams, Debra
Clark, Baron J. Lowe, Melanie D. Lowe, Fredrick Glen
Williams, Kristy A. Williams, and Flynn R. DuBose, Jr.,
all investors, brought this action naming as defendants
several investment companies (TS Capital Partners; TS
Capital Partners, LLC; TS Capital Management, LLC; TS
Capital Fund LP; and TS Capital GP, LLC) and the two
individuals who co-founded and controlled those companies
(Thomas H. Tuberville and John David Stroud).  Plaintiffs
claim violations of federal and state securities and
commodities exchange laws, breaches of fiduciary duties,

unjust enrichment, negligence and wantonness, fraud, and conversion.  Subject-matter jurisdiction is proper under 28 U.S.C. § 1331 (federal question), 7 U.S.C. § 25(c) (Commodities Exchange Act), and 28 U.S.C. § 1367 (supplemental).  The case is now before this court on Stroud's motions to stay the litigation.  For the reasons that follow, the motions will be denied.

## I. BACKGROUND

### A.

The allegations in this case are as follows. Plaintiffs, all of whom sought to grow their savings for retirement, entrusted Tuberville and Stroud with investing their money; they came to regret that decision. Savvy investors (which plaintiffs allegedly were not) may have seen warning signs that plaintiffs overlooked.  For example, plaintiffs allege that, while Tuberville and Stroud purportedly did business as agents of various entities, at least one of those entities was nonexistent

(it was never actually organized under the laws of any State); that plaintiffs were solicited through various documents that were purported to be exempt from regulatory requirements, but the claimed exemption was a falsehood; and that plaintiffs were assured that everything was in order with their accounts, the books were regularly audited by a certified public-accounting firm, all the necessary legal matters were handled by a law firm, and the funds were administered by responsible third parties.  Plaintiffs now believe that was all untrue.

Plaintiffs further contend that, in fact, less than half of their funds were ever invested; that Tuberville and Stroud used the majority of their cash for personal purposes; that, when plaintiffs' accounts dried up under Tuberville and Stroud's mismanagement, the two sought to conceal that fact, sending plaintiffs doctored bank statements and making misrepresentations over the telephone; and that, as of today, plaintiffs cannot say

where their funds have gone, although they believe that it has been misappropriated, converted, and otherwise squandered for the benefit of Tuberville and Stroud. Tuberville has generally denied all of plaintiffs' allegations. Stroud has not filed an answer with the court and has not otherwise provided any indication of whether he contests the claims brought against him.

Shortly after plaintiffs started this lawsuit, the U.S. Commodity Futures Trading Commission instituted its own case against Stroud (but not Tuberville) and his companies in this court. The commission alleged similar facts as plaintiffs in this case. Shortly after that, Stroud (and not Tuberville) was criminally indicted by an Alabama grand jury. The indictment charged Stroud with committing various sorts of fraud, misusing investors' money for personal purposes, and failing to register with the Alabama Securities Commission when he was legally required to do so.

B.

After the grand jury indicted Stroud, Tuberville filed a motion with this court asking to have discovery in this case stayed pending resolution of the criminal charges brought against Stroud. Tuberville stated that, in a deposition taken of Stroud in connection with the commission case, Stroud refused to answer substantively all questions asked, instead invoking his Fifth Amendment right against self-incrimination; Tuberville argued that Stroud's testimony was critical to his ability to defend himself, and, until the criminal matter against Stroud was resolved, Stroud would likely continue invoking his right to remain silent when questioned; and, as such, if this litigation were not stayed, Tuberville argues, he would be unfairly prejudiced. The court denied Tuberville's motion without issuing a written opinion.

The day immediately after this court denied Tuberville's motion, Stroud filed with the court his own

motion to stay.[1]  He submitted the motion pro se (on his own behalf, rather than through an attorney).  The motion was an almost identical reproduction of Tuberville's previously denied motion; Stroud replaced a handful of words in places throughout the document (mostly replacing Tuberville's name with his own), but largely reproduced the prior motion's text in its entirety.  As such, Stroud argued that, because he would likely continue to invoke the Fifth Amendment, Tuberville would be unable to develop evidence critical to his defense and that the court should stay this litigation to protect Tuberville's interests.  A couple weeks later, Stroud filed with the court a second motion that was identical to the first submission.  Both motions are now before the court.

───────────────

    1.  Although docketed after the court's denial of Tuberville's motion, Stroud's first motion was likely created before the court's order was issued.

C.

The court must now decide for the second time whether to stay this civil lawsuit pending resolution of the criminal case against Stroud.


II. STANDARD

This court "has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 265-66 (1936).  "[T]he court, in its sound discretion, must assess and balance the nature and substantiality of the injustices claimed on either side."  Feld Entertainment,

7

Inc. v. A.S.P.C.A., 523 F. Supp. 2d 1, 3 (D.D.C. 2007)
(Sullivan, J.) (citation omitted).

Courts are often faced with circumstances similar to
this one, where a defendant in a civil action asks to
have the case stayed pending a criminal prosecution
brought against him.  In such cases, "[i]t is the rule,
rather than the exception that [the] civil and criminal
cases proceed together."  U.S. ex rel. Gonzalez v.
Fresenius Medical Care North America, 571 F. Supp. 2d
758, 761 (W.D. Tex. 2008) (Martinez, J.) (quotation marks
and citation omitted).  "A court must stay a civil
proceeding pending resolution of a criminal prosecution
only when special circumstances so require in the
interests of justice."  S.E.C. v. Wright, 261 F. App'x
259, 263 (11th Cir. 2008) (quoting United States v. Lot
5, Fox Grove, Alachua County, Fla., 23 F.3d 359, 364
(11th Cir. 1994)); see also S.E.C. v. Dresser Indus., 628
F.2d 1368, 1374 (D.C. Cir. 1980), cert. denied, 449 U.S.
993 (1980) ("In the absence of substantial prejudice to
the rights of the parties, such parallel proceedings are

8

unobjectionable."). Absent a showing of special circumstances, staying the litigation is unwarranted.

Courts have turned to a number of factors in these cases to determine whether special circumstances are present. Commonly cited considerations include: "(1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the case, including whether the defendants have been indicted; (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest." Yeomans v. Forster & Howell, Inc., 2009 WL 2960387, at *1 (M.D. Ala. Sept. 10, 2009) (Albritton, J.) (citation omitted). Those factors cannot be mechanically applied; how the court balances competing considerations must ultimately be an individual inquiry, tailored to the unique circumstances of the case at hand. See Volmar Distributors, Inc. v. New York Post Co., Inc., 152 F.R.D. 36, 39 (S.D.N.Y.

9

1993) (Conner, J.) ("Balancing these factors is a case-by-case determination, with the basic goal being to avoid prejudice.").

## III. DISCUSSION

The court first disposes of the argument that Stroud's invocation of the Fifth Amendment is, without more, sufficient to constitute special circumstances. There is no question that "the blanket assertion of the privilege against self-incrimination is an inadequate basis for the issuance of a stay." Wright, 261 F. App'x at 263; see also Alcala v. Texas Webb County, 625 F. Supp. 2d 391, 401 (S.D. Tex. 2009) ("[T]o warrant a stay, a defendant must make a strong showing that the two proceedings will so overlap that either (1) he cannot protect himself in the civil proceeding by selectively invoking his Fifth Amendment privilege, or (2) effective defense of both [the criminal and civil cases] is impossible.") (citing Koester v. American Republic Investments, Inc., 11 F.3d 818, 823 (8th Cir. 1993)). By

10

indicating that he will continue to invoke the Fifth Amendment and by showing nothing more than that "blanket assertion," Stroud has plainly failed to meet his burden. Moreover, in asserting his invocation of the Fifth Amendment as a basis for staying this litigation, Stroud expressly does so to protect the interests of his co-defendant; he does not purport to protect his own interests.[2]   The court did not previously find Tuberville's private interests sufficiently compelling to warrant staying this case, and, with Tuberville's private interests now asserted by a person other than Tuberville

---

2.   The court finds it questionable whether Stroud has standing to assert Tuberville's interests since a party "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Ward v. Seldin, 422 U.S. 490, 499 (1975) (quoting Tileston v. Ullman, 318 U.S. 44 (1943)).   But, that aspect of the standing doctrine is prudential, rather than mandated by Article III's case-or-controversy requirement. Kowalski v. Tesmer, 543 U.S. 125, 129 (2004).   Given the circumstances of this case, the court finds it prudent to put aside the standing issue and reach the merits of Stroud's motion.

himself, the court finds the argument for a stay less persuasive.

Indeed, the record does not establish that, should the criminal prosecution against Stroud end with a conviction, he will not proceed with an appeal or collateral attack on the judgment, and, as such, that the likelihood of his invoking the Fifth Amendment and refusing to testify will be obviated. The record also does not establish that, if the state prosecution ends with an acquittal, Stroud cannot nevertheless be prosecuted in federal court, under federal law, and that thus he has no reasonable grounds to fear as much, especially given that federal officials are investigating his past conduct; or even that he will not be subject to subsequent prosecution in the state courts under a different criminal statute than was used in the first prosecution. Given those possibilities, Stroud would surely continue exercising his right to remain silent. Finally and admittedly, there is the possibility of Stroud's pleading guilty, but there is nothing in the

12

record to suggest that he is likely to do so.  In short,
there is no reason to think that Stroud will stop
invoking his Fifth-Amendment privilege any time in the
near future.

Another consideration the court finds highly relevant
in this case is the nature of Tuberville and Stroud's
alleged wrongdoing.  Both are civilly accused of
sophisticated financial fraud, and Stroud is criminally
accused of the same.  "[T]here are many reasons why it
may be particularly undesirable to stay civil cases
against defendants accused" of such wrongs.  Int'l
Business Machines Corp. v. Brown, 857 F. Supp. 1384, 1391
(C.D. Cal. 1994) (Letts, J.).  Generally speaking, in the
case of pending civil and criminal proceedings, "[i]t is
hard to see why the indirect societal interest in
bringing to justice the perpetrators of crimes should
ever take precedence over the direct interest of the
victims of crimes to obtain redress for their losses."
Id.  But in the particular case of fraud--where "[i]t is
to be expected that as soon as the defrauder learns that

he is under suspicion, he will undertake to abscond with, spend or hide the fraud proceeds"--the victims' interests in having their rights expeditiously declared are especially strong.  Id.

The concern is illustrated well in this case.  After the indictment against Stroud was issued, plaintiffs state that he left his residence in Auburn, Alabama and moved to an undisclosed location.  Since then, plaintiffs have had difficulty serving documents on Stroud (although plaintiffs' process server eventually located him in Uriah, Alabama and personally served an amended version of the complaint on him).  As noted above, Stroud has not yet filed an answer to plaintiffs' complaint in this case; his sole participation in the lawsuit has been the two motions to stay that are now before the court.  With those motions, Stroud flagrantly violated Rule 11 of the Federal Rules of Civil Procedure by failing to provide the court with his mailing address, e-mail address, telephone number, or any other contact information.  See Fed. R. Crim. P. 11(a) ("Every ... written motion must be

signed ... by [an unrepresented] party personally ....
The paper must state the signer's address, e-mail
address, and telephone number.").

The court also finds it relevant that, despite
Stroud's minimal participation this litigation, he has
seemingly already made one misrepresentation to the
court. If that is the case, Stroud's misrepresentation
constitutes a separate violation of Rule 11. See Fed. R.
Civ. P. 11(b)(3) ("By presenting to the court a ...
written motion ... an ... unrepresented party certifies
that to the best of the person's knowledge, information,
and belief ... the factual contentions have evidentiary
support ...."). In the first paragraphs of Stroud's two
motions, he stated that, "The undersigned has contacted
Plaintiffs' counsel, who has stated that Plaintiffs
oppose the relief requested by Stroud." Def.'s Mot.
(Doc. Nos. 50 & 53) at 1. That sentence was copied
almost identically from Tuberville's earlier motion; all
Stroud changed was Tuberville's name to his own.
Plaintiffs stated to the court that Stroud's contention

15

about contacting them was a "bald-faced lie"; Stroud had made no contact with plaintiffs or their counsel. Pls.' Memo in Opp. (Doc. No. 56) at 6.

Given this pattern of elusive behavior and lack of meaningful participation in this lawsuit, plaintiffs' interests in having the litigation proceed (and having the opportunity to ask the court for a default judgment if Stroud's non-cooperation continues) are compelling. Cf. Int'l Business Machines Corp., 857 F. Supp. at 1391 ("[A] stay of this action would delay and likely hinder any possible recovery that [the plaintiff] may obtain."). Balanced against Tuberville's interests (as conveyed through Stroud), the decision to deny Stroud's motion to stay is not a close one. Moreover, the interest in plaintiffs' ability to seek recovery against their alleged defrauder does not lie solely with plaintiffs; rather, the court finds it decidedly in the public interest that victims of fraud be able to pursue recovery in cases like this one. "To require the victim[s] to forgo the pursuit of [their] own rights for an

16

indeterminate period, while awaiting the ... outcome  of

an investigation done in pursuit of broader interests,

seems unnecessary and unfair."  Id.

The court holds that, at this time, based on the

record before it, a stay in this case would be

unwarranted and unjust.  If circumstances materially

change, Tuberville or Stroud may ask the court to

consider staying the litigation in light of the changed

circumstances.  See U.S. ex rel. Gonzalez, 571 F. Supp.

2d at 766 ("Of course, if circumstances change, the

parties are free to request that the Court reconsider the

propriety of a stay.").


***


Accordingly, it is ORDERED that defendant John David

Stroud's motions to stay (Doc. Nos. 50 & 53) are denied.

DONE, this the 6th day of March, 2013.


                       /s/ Myron H. Thompson
                    UNITED STATES DISTRICT JUDGE